The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| G. LOOMIS, INC., <br><br>　　　　Plaintiff, <br><br>v. <br><br>GARY A. LOOMIS, et al., <br><br>　　　　Defendant. | Case No. 3:09-cv-05236-BHS <br><br>**DECLARATION OF ANNETTE L. HURST IN SUPPORT OF MOTION TO WITHDRAW AS COUNSEL AND CERTIFICATION RE NOTICE TO CORPORATION RE POTENTIAL EFFECTS OF WITHDRAWAL** |

1. I, Annette L. Hurst, declare as follows:

2. I am a partner with the law firm of Orrick, Herrington & Sutcliffe admitted to practice before the Bar of the State of California and numerous federal district courts and courts of appeals throughout the United States. I have previously been admitted *pro hac vice* to practice before this Court in another matter. Because of the circumstances described below, I have not sought admission to this Court *pro hac vice* in connection with this matter, and instead file this declaration in support of Orrick's motion to withdraw as counsel. Everything stated herein is true and correct of my own personal knowledge except where stated as to information and belief, and as to those matters I believe them to be true. I could and would testify competently to the contents hereof if called upon to do so by the Court.

3. I was previously a shareholder with Heller Ehrman LLP prior to its unexpected and

HURST DECLARATION IN SUPPORT OF
MOTION TO WITHDRAW

Orrick Herrington & Sutcliffe LLP
701 5th Ave., Suite 5700
Seattle, WA 98104-7097
tel + 1-206-839-4300

untimely dissolution in September 2008. Prior to the dissolution, I am informed by my partner Beth Goldman, a trademark prosecution attorney, that Mr. Geoffrey Goetz of Loomis Outdoors Holdings, Inc. contacted her and sought to have Heller retained to advise it and Gary Loomis regarding certain trademark matters. After we moved to Orrick in the wake of Heller's dissolution, G. Loomis, Inc. sent cease and desist correspondence to Loomis Outdoors. Ms. Goldman sought my involvement in discussing this new potential litigation matter with Mr. Goetz, and at his direction we assumed the representation. Mr. Goetz told us he was the President of Loomis Outdoors. I did not, and I am informed that Ms. Goldman did not, confirm the precise corporate name of the company at that time as it was reflected on the rolls of the Secretary of State of the State of Washington.

4. On or about October 30, 2008, G. Loomis, Inc. filed its initial Complaint in this action in the United States District Court for the Central District of California, naming Gary Loomis, Loomis/Borger Outdoors Holding, Inc., Targus Fly & Feather, Inc. ("Targus") and Loomis Outdoors, Inc. as defendants. At Mr. Goetz and Mr. Loomis's instruction, Orrick undertook to represent all of these defendants other than Targus. Mr. Goetz and Mr. Loomis informed us that Mr. Goetz would handle the matter on a daily basis and would generally provide us with the required instructions. They informed us that they believed Loomis/Borger was a nonexistent entity and that there was only a single Loomis Outdoors entity. On November 4, 2008, Mr. Goetz instructed us in writing that we were authorized to accept service on behalf of Loomis Outdoors, Loomis/Borger and Gary Loomis. I am informed by Ms. Goldman that on or about November 11, 2008, Ms. Goldman sent two engagement letters for this new litigation matter, one addressed to Mr. Goetz for the corporate entities, and one addressed to Mr. Loomis in his individual capacity, both sent care of Loomis Outdoors. The engagement letters provided, amongst other things, that the clients would pay Orrick our hourly rates for legal services rendered.

5. Thereafter, Orrick undertook to investigate the matter and act as defense counsel for the referenced entities. I signed waivers of service for the clients whom we were authorized to represent. We met and conferred with Plaintiff's counsel about defects in the Complaint. On or

about December 8, 2008, we received a copy of the First Amended Complaint filed by Plaintiff in the action, adding two new defendants, Gary Loomis, Inc. and LBS Financial Services, LLC. After discussions with our then-current clients and LBS, we agreed to represent new defendant Gary Loomis, Inc. but not LBS Financial Services, LLC, and informed Plaintiff's counsel that we would accept service for Gary Loomis, Inc. Various additional conferences with Plaintiff's counsel occurred, and ultimately the parties engaged in the motion practice that resulted in a successful motion to transfer the action to this Court.

6. In the meantime, however, in or about January 2009, we became aware that disputes had arisen amongst the various defendants whom we represented. We were not involved in these disputes but learned of them when Geoff Goetz informed us that he was resigning as President of Loomis Outdoors. At that time, he instructed us that we should take further instruction on behalf of Loomis Outdoors from Lowell Hancher, Jr. ("Bob Hancher") and Burl Outlaw. He provided us with phone numbers and e-mail addresses for each of them, and a mailing address for Mr. Hancher. He also informed us that Mr. Outlaw did not have a mailing address because Mr. Outlaw lived in a recreational vehicle, traveling from place to place at his convenience.

7. In light of the disagreements that had arisen amongst the various defendants we represented, we held telephone conferences with Messrs. Outlaw, Hancher and Loomis, together and separately, to confirm whether all of the defendants we were then representing could and should continue to be represented by us. At that time we also investigated and learned for the first time that apparently neither Mr. Goetz nor Mr. Loomis had ever sent back the signed engagement agreements. Mr. Loomis then retained separate "shadow" counsel, and we informed his separate counsel of the situation. All parties expressly agreed that we should continue representing them through the period contemplated by the motion practice seeking a transfer to this Court, and that we would reevaluate the conflicts situation at that time. In each telephone conference regarding the conflicts issues, Mr. Outlaw, Mr. Hancher and Mr. Loomis also promised that Loomis Outdoors and Mr. Loomis would pay Orrick its fees for the entire representation. From that point forward, Mr. Gary Loomis gave us instructions on behalf of Gary Loomis and Gary Loomis, Inc.

Messrs. Outlaw and Hancher began giving us instructions regarding Loomis Outdoors. All of them communicated with us by e-mail and telephone.

8. On February 11, 2009, I had a further conversation with Mr. Burl Outlaw in which he again consented to the continued joint representation and promised that Loomis Outdoors would pay all outstanding Orrick invoices within two weeks. I confirmed this conversation in a writing.

9. On April 22, 2009, the Central District issues its order transferring the case to this Court. I transmitted the order to Messrs. Outlaw, Hancher and Loomis by e-mail and received confirmation that they had received it.

10. After the transfer, the issue of conflicts and non-payment again arose, as Orrick still had not been paid for its invoices, despite the promises of all of the clients whom we represented. On April 27, 2009, I informed Messrs. Loomis, Outlaw and Hancher that the case had been transferred and a new case file opened in Tacoma by the United States District Court for the Western District of Washington, with Judge Benjamin Settle assigned to hear the matter. I asked them to inform us whether it was appropriate to continue representing the entire group in light of the conflicts that had arisen amongst them, and also demanded payment of our outstanding fees and costs. I informed them that we "must get this resolved this week." On April 28, 2009, we learned that Plaintiff would be filing a further amended pleading. Our clients did not respond by the requested deadline as to whether we should continue a joint representation or when we would be paid. On May 6, 2009, Mr. Hancher again promised at least partial payment of our outstanding invoices on behalf of Loomis Outdoors.

11. On May 6, 2009 I sent an e-mail to Messrs. Loomis, Hancher and Outlaw using the e-mail addresses with which I had previously communicated successfully with them on numerous occasions. In the e-mail I set forth the history with respect to the conflicts and non-payment issues. I stated that "we are preparing a motion to withdraw that will specify two grounds for seeking withdrawal: (1) nonpayment; and (2) conflicts amongst the defendant group preventing our continued representation of all parties. We expect that motion to be heard on 7-days notice once it is filed, and we do not expect Plaintiff to oppose it." Additionally, I stated in the e-mail

that, "[p]ursuant to California and Washington law, we hereby notify you that none of the entity defendants will be able to represent themselves in Court, but instead must be represented by licensed attorneys authorized to practice in the jurisdiction. If these entities fail to obtain replacement counsel by the date the withdrawal becomes effective, a default may be taken against them and may ultimately result in the entry of judgment against them on the terms sought by G. Loomis." The same day, G. Loomis, Inc. filed its motion to amend, and I forwarded the motion to Messrs. Outlaw, Hancher and Loomis using the e-mail addresses with which I had customarily corresponded with them.

11. After sending the May 6 e-mails, I sent several more asking whether defendants had obtained new counsel and reiterating that Orrick would seek to withdraw. Throughout this period, I am informed that my partner Beth Goldman also placed several telephone calls to Bob Hancher which were not returned. On May 11, I informed Messrs. Lowell and Hancher that I believed Mr. Loomis had lined up new counsel who would be representing him in the case, and I again asked them whether they had identified new counsel or "should we proceed with a motion to withdraw." On May 11 I received an e-mail in response from Mr. Hancher saying, "i [sic] will determine the answer and notify you today." No further response was forthcoming from Mr. Hancher, and this was the last communication we have received from either Messrs. Outlaw or Hancher, despite have tried to reach them repeatedly by e-mail and by telephone. On May 19, I forwarded the Second Amended Complaint to Messrs Outlaw, Hancher and Loomis, as well as Mr. Rheaume of Davis Wright & Tremaine (whom I had by then been informed would substitute in for Mr. Loomis and Gary Loomis, Inc.) with a cover e-mail stating, "the clock is now ticking for a response to the Second Amended Complaint. I believe we have nearly finalized substitution papers for Gary Loomis. Burl and Bob, we are not going to do this work without getting paid, so I plan to file a motion to withdraw shortly."

12. As of May 22, 2009, Mr. Rheaume of the Davis, Wright & Tremaine firm has now appeared and substituted in the case on behalf of Gary Loomis and Gary Loomis, Inc. On or about May 29, 2009, I learned that Jim Holland of Hall and Holland was representing Loomis Outdoors in its dispute with Gary Loomis. I inquired of him whether he intended to represent Loomis

HURST DECLARATION IN SUPPORT OF
MOTION TO WITHDRAW

5

Orrick Herrington & Sutcliffe LLP
701 5th Ave., Suite 5700
Seattle, WA 98104-7097
tel + 1-206-839-4300

Outdoors in this matter, and he informed me that he did not in an e-mail that he copied to Messrs. Outlaw and Hancher. I replied to all of them and again asked "Burl & Bob: do you have new counsel or should I file this motion to withdraw?"

13. On June 12, 2009, I wrote an e-mail to Neil Erickson on behalf of Plaintiff, and Warren Rheaume on behalf of Mr. Loomis and Gary Loomis, Inc., explaining to them that we intended to move to withdraw from representation of "Loomis Borger Outdoors, Inc. dba Loomis Outdoors, Inc. on grounds of non-payment, conflicts of interest that arose amongst our entire group of former clients preventing further representation of them, and failure to communicate with us." I asked whether they had any objection to the motion.

14. On June 15, 2009, Mr. Erickson responded that he had no objection but that he would seek to take a default. I responded and asked him to delay doing so since we were acting under a disability due to conflict of interest, and that it would make no sense if new counsel appeared in response to the motion to withdraw.

15. Orrick issued monthly invoices in this matter setting forth all fees and costs actually and reasonably incurred. Invoices were issued on the following dates: December 15, 2008, January 27, 2009, February 13, 2009, March 13, 2009, April 16, 2009, May 15, 2009 and June 12, 2009. Only $420 has been paid of the invoices issued for services rendered in this matter. Orrick is presently owed $133,671.80 in fees, and $7,903.93 in costs. Nearly all of these sums is long overdue, and Orrick at present has no reasonable expectation of payment absent legal action against its former clients.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was hereby executed on June 16, 2009 at San Francisco, California.

By 
Annette L. Hurst (CA Bar 148738)